PER CURIAM.
The ultimate question presented is whether the appellant, a pretermitted wife under the husband’s will, demonstrated by competent evidence that the pre-marital agreement signed by her was presumptively a product of her husband’s overreaching, thus shifting to the husband the burden of coming forth with evidence that the wife entered into the agreement voluntarily.
The evidence presented by the petitioner/wife, and adopted by the trial court in his extensive findings of fact, is essentially as follows.
The petitioner and the decedent, Ralph Edsell, met in 1978, when the petitioner was a guest at “The Moorings,” a resort owned and operated by the decedent in Islamorada. The decedent, who had been a lawyer in Long Island, New York, had owned and operated the Moorings since approximately 1975.
A relationship between the decedent and the petitioner developed, and they lived together at the Moorings for about three years prior to their marriage. During this period, the petitioner helped run the business, and apparently also did some other work, including (in 1981) selling handbags which she had painted. Also during this same period, petitioner and the decedent bought a home in Monson, Maine for a purchase price of $21,500. The down payment of $5,000 was paid one-half each by the petitioner and the decedent, and they took title to the property as joint tenants. They also purchased a lot in Islamorada for $9,000, with each party paying one-half in cash.
In addition to an interest in these properties, the petitioner’s assets as of the date of their marriage on February 7, 1981, included a savings account with a $3,000 balance, another savings account in Maine with an approximate balance of $1,000, a 1976 Buick with a value of approximately $1,200, and a money market fund with a balance of approximately $3,000. She also had a beneficial interest in the income of a discretionary trust created by the will of her father which had a principal value of $82,000. Her total assets, exclusive of the life interest in the income from the discretionary trust, were $15,200. By comparison, the decedent’s estate as of the date of his death was approximately $641,000.
The parties planned a small wedding for February 7, 1981. Arrangements were made for a minister and a church; the flowers and cake had been ordered; friends had been notified of the wedding date. Petitioner’s mother financed a honeymoon cruise which was to follow immediately after the wedding, and which was to include *265 the mother, petitioner’s sisters and brothers and their spouses. On February 6, 1981, the date before the wedding, the decedent wrote out in long-hand a premarital agreement and gave it to petitioner to type. She typed the instrument and immediately signed it at his request in the living room with no one else present.[1] The wedding ceremony took place as scheduled on February 7, 1981 in Islamorada.
At the conclusion of the petitioner’s case, respondents, the co-personal representatives, moved for a judgment of involuntary dismissal. After* hearing the arguments of counsel and after considering both the pleadings filed and the evidence presented by the petitioner, the court, applying the standards set forth in Lutgert v. Lutgert, 338 So.2d 1111 (Fla. 2d DCA 1976), granted the motion, holding that the wife had failed to adduce sufficient facts to raise any presumption of overreaching on the part of the husband. We disagree.
The parties agree that the Lutgert standard is applicable. In setting aside a premarital agreement, the Lutgert court focused on the following facts:
Passage had been booked for a honeymoon cruise to Europe; rings had been bought; a trousseau had been bought; all invitations to family and friends had been given; all arrangements otherwise had been made; an ultimatum had been delivered by the husband: “No agreement, no wedding”; and, obviously, there arose a sudden stark awareness of the potential immediate loss of a future life of enormous grandeur.
Lutgert, 338 So.2d at 1116. Appellees point to two factors as factually distinguishing this case from Lutgert: (1) the assets of the husband are approximately $641,000 as compared to the assets of Mr. Lutgert which were approximately $25,-000,000, and (2) the signing of the premarital agreement by the petitioner was not expressly a condition of the marriage. Lutgert v. Lutgert holds that a presumption of undue influence or overreaching arises in transactions between persons to be married when a pre-marital agreement benefits one of the parties in a grossly disproportionate fashion and there are sufficient coercive circumstances surrounding execution of the agreement. The presumption then places on the husband the burden of coming forth with evidence showing that the wife’s execution of the agreement was voluntary.
We agree that on the facts in Lutgert the finding of disproportionate benefits and coercive circumstances was relatively easy. To a lesser degree the benefits to the husband flowing from the agreement in this case were nonetheless grossly disproportionate. Although Mr. Lutgert clearly made the execution of the pre-marital agreement a condition of the marriage, the Lutgert case stands for the proposition that coercive circumstances may exist independent of an expressed ultimatum. Even *266 in the absence of a communication that there would be no wedding without the agreement, the circumstances here suggest strongly that petitioner was under some compulsion to sign the agreement.
Petitioner carried her burden of showing that the husband’s benefit from the premarital agreement was grossly disproportionate to hers and that the circumstances surrounding the execution of the agreement were coercive. An involuntary dismissal at the end of the petitioner’s case was erroneous where the burden, having been carried by the petitioner, then shifted to the appellees to come forward with evidence on the issue of voluntariness. See Tillman v. Baskin, 260 So.2d 509 (Fla. 1972) (trial judge, when ruling on a defendant’s motion for involuntary dismissal following the presentation of a prima facie case by a plaintiff in a non-jury trial, cannot weigh evidence and enter judgment before the defendant’s defense evidence, if any, is presented).
Reversed and remanded for a new trial.

. The agreement in its entirety is as follows:
WHEREAS Ralph James Edsell Jr. and Mary June Drake desire to marry and to enter into a PRE-MARITAL AGREEMENT before said marriage and,
WHEREAS each of said parties has been married before and divorced and,
WHEREAS each of said parties has children by virtue of their former marriage and wish to provide for said children,
NOW THEREFORE BE IT RESOLVED that:
(1) neither party in the event of separation or divorce shall have any claim to alimony or other material benefits that might arise out of said marriage now or in the future and,
(2) neither party shall have any spouses’ claim to the estate of the other.
That the parties do freely and voluntarily enter into this PRE-MARITAL AGREEMENT having been fully advised of their rights and knowing fully the rights that each has waived and both parties state that in no way was the entering into this PRE-MARITAL AGREEMENT made a condition of marriage.
IN WITNESS WHEREOF the parties have hereunto set their hands and seals this _ day of February, 1981.
/s/_ RALPH JAMES EDSELL, JR.
/s/_ MARY JUNE DRAKE